IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SANDRA K. ROBB                                                                                                PLAINTIFF

V.                              Civil No. 2:17-cv-02025-PKH-MEF

NANCY A. BERRYHILL, Commissioner
Social Security Administration                                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sandra K. Robb, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.      PROCEDURAL BACKGROUND:

Plaintiff filed her application for DIB on May 9, 2012, alleging an amended onset date of January 6, 2010, due to disc problems in her lower back and tingling and cracking of her hands. (ECF No. 11, pp. 126-129, 155, 169-170).  Based on her work credits, the Commissioner determined that the Plaintiff met the insured status requirements of the Act through December 31, 2015.  (ECF No. 11, p. 273).

Plaintiff's application was denied at both the initial and reconsideration levels.  Following an administrative hearing on March 5, 2013 (ECF No. 11, pp. 32-71, 354-393), an

administrative law judge ("ALJ") entered an unfavorable decision (ECF No. 11, pp. 19-27, 318-326). Upon appeal to this Court, the matter was remanded to the Commissioner for further consideration of the Plaintiff's RFC. (ECF No. 11, pp. 335-346). On September 7, 2016, the ALJ held a supplemental administrative hearing. (ECF No. 11, pp. 288-314). Plaintiff was present and represented by counsel.

On October 18, 2016, the ALJ concluded that the Plaintiff's disorder of the lumbar spine, carpal tunnel syndrome ("CTS"), and disorder of the right knee status post total knee replacement were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 11, pp. 271-282). The ALJ found Plaintiff capable of performing sedentary work involving occasional pushing and/or pulling with her bilateral upper extremities; frequent reaching, handling, fingering, feeling, operation of foot controls, balancing, stooping, kneeling, crouching, and crawling; and, occasional climbing. Further, the ALJ concluded she could not tolerate exposure to unprotected heights or moving mechanical parts, could only occasionally operate a motor vehicle, and required the use of a cane to ambulate. With the assistance of a vocational expert, the ALJ determined Plaintiff could return to her past relevant work ("PRW") as an accounting clerk.

Subsequently, Plaintiff filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 12, 13).

## II. APPLICABLE LAW:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

    A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

    The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the

3

impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. DISCUSSION:

Plaintiff raises essentially one issue on appeal: whether substantial evidence supports the ALJ's RFC determination. Following a thorough review of the record, the undersigned finds that the record lacks substantial evidence to support the RFC determination.

We note that this matter was previously remanded for further consideration of the Plaintiff's RFC. The Court was concerned that the ALJ's RFC assessment, limiting her to frequent, but less than constant, handling and fingering with her bilateral hands, did not adequately account for the limitations resulting from her moderate to severe bilateral CTS. On remand, the ALJ was directed to obtain an RFC assessment from Plaintiff's orthopedic surgeon, but was unable to do so. He did, however, order a consultative orthopedic examination with Dr. Ted Honghiran.

On April 11, 2016, Dr. Honghiran examined the Plaintiff. (ECF No. 11, pp. 515-524). On presentation, Plaintiff complained of chronic lower back pain, right knee pain, and wrist pain when using her wrists "a lot." She admitted that her knee pain was currently her most pressing impairment, reporting that she was scheduled for knee replacement surgery the

following month.  Additionally, the Plaintiff indicated that she had undergone carpal tunnel release surgery on her right upper extremity in October 2014.  An examination revealed a complete range of motion in both wrists, but a tingling sensation along the median nerve in both hands.  Dr. Honghiran diagnosed bilateral CTS, assessed her prognosis as fair, and concluded she will probably not be able to return to her past relevant work ("PRW").  (ECF No. 11, p. 516).

Dr. Honghiran also completed an RFC assessment.  He opined that the Plaintiff could sit for two hours at one time without interruption, up to a total of four hours during an eight-hour workday; and, that she could stand and walk for one hour at one time without interruption, up to a total of two hours during an eight-hour workday.  (ECF No. 11, pp. 518).  Further, he limited her to occasional pushing/pulling with her right hand and occasional feeling with her left hand.  (ECF No. 11, p. 519).

The ALJ ultimately concluded Plaintiff could occasionally push and/or pull with her bilateral upper extremities and frequently reach, handle, finger, and feel.  Further, he found that she could return to her PRW as an accounting clerk.  In so doing, he claims to have given Dr. Honghiran's assessment great weight; however, the ALJ fails to account for Dr. Honghiran's limitation on feeling with the left hand, his notation that Plaintiff experienced wrist pain when using her wrists "a lot," and his opinion that the Plaintiff could not return to her PRW.  Aside from stating that Dr. Honghiran's opinion that the Plaintiff would probably not be able to return to her PRW was a vocational issue reserved to the Commissioner and outside the scope of the doctor's medical expertise, the ALJ provided no explanation for his variance from the doctor's assessment.

The ALJ did attempt to discredit the Plaintiff's subjective complaints for a number of reasons, including the following: (1) her failure to seek out treatment for her CTS until 2012, two years after her alleged onset date; (2) the fact that she did not seek out additional treatment for her wrist pain following her post-operative appointment in December 2014, despite records indicating that her knee pain became severe at this time and ultimately resulted in her undergoing total knee replacement surgery in May 2016; (3) a 16-month gap in treatment explained by the Plaintiff as being due to a change in her insurance providers; (4) the fact that the Plaintiff performed accommodated, seasonal work at Greer's Kopper Kettle between 2011 and 2014 that did not rise to the level of substantial gainful activity and allowed her to work for three hours per day and to take breaks and rest as needed; and, (5) Plaintiff's daily activities which were said to include household chores, caring for her grandchildren, and fishing a couple of times per year. We do not, however, find any of these reasons significant enough to undermine the objective evidence contained in the record. Accordingly, because the record supports the proposition that the Plaintiff is, at least, limited to activities involving no more than occasional handling, fingering, and feeling, the undersigned finds that this matter must be remanded a second time for further consideration of the Plaintiff's RFC.[1]

---

[1] In March 2013, prior to Plaintiff's carpal tunnel release surgery, Catherine Mustain, a Physician's Assistant supervised by Dr. John Williams, completed a medical source statement imposing the following restrictions: lift/carry 20 pounds rarely and up to 5 pounds occasionally; never push/pull, work in extended position, work above shoulder level, work overhead, or reach; rarely grasp; and, rarely to occasionally finger/perform fine manipulation. (ECF No. 11, pp. 248-250). Additionally, examination records from PA Mustain and Drs. Carolyn Dillard and Miles Johnson document tenderness in both wrists, with the right being greater than the left; positive Tinel's and Phalen's signs in both wrists; and, tendon sheath swelling. (ECF No. 11, pp. 251-255, 258-267, 621-630). Further, nerve conduction studies conducted in August 2014 showed moderately severe *bilateral* median neuropathies consistent with a diagnosis of carpal tunnel syndrome. (ECF No. 11, 258-263). And, we note that Dr. Honghiran's examination in 2016, well after the surgery on her right hand, revealed continued sensory abnormalities in both upper extremities.

Additionally, it does not appear that Dr. Honghiran performed a thorough examination of the Plaintiff's hands and wrists. Despite finding sensory abnormalities along the median nerves, the record is devoid of evidence to indicate that Dr. Honghiran performed grip strength testing, Tinel's sign testing, Phalen's sign testing, or a two-point discrimination test, all tests used to diagnose and assess the severity of CTS.  In fact, when asked on the RFC form to identify the particular medical or clinical findings that support his assessment regarding her hands, Dr. Honghiran left it blank.  He also failed to record the actual range of motion in Plaintiff's hands and wrists, although he did note the range of motion in her lumbar spine and knees.  (ECF No. 11, p. 523).  Further, the Plaintiff testified that Dr. Honghiran only spent 20 minutes with her and did not examine her wrists or test her grip strength.  (ECF No. 11, pp. 297-298).  Thus, given that the limiting effects of Plaintiff's CTS were the main reason for the prior remand, the ALJ should have directed specific questions to the orthopedist to ensure that his examination targeted this area of concern.  Because he failed to do so, remand is also necessary to allow the ALJ to obtain an assessment of the Plaintiff's ability to use her hands to perform work-like activities.  On remand, the ALJ is directed to have Dr. Honghiran conduct a thorough CTS evaluation of the Plaintiff, complete with objective explanations to support his findings.  The ALJ should also ask him to explain the types of activities that would trigger the Plaintiff's wrist pain, how much wrist activity is considered "a lot," and how the Plaintiff's impairments would prevent her from returning to her PRW as an accounting clerk.

## IV. CONCLUSION:

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of January 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE